IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE: )
Stanley J. Lawrence )
) Case No. 15-12373
Debtor(s). )
)

## MOTION FOR APPROVAL OF INTENDED COMPROMISE

COMES NOW Linda S. Parks, trustee herein, and hereby moves the Court for an Order approving the intended compromise between the trustee and Dian L. Lawrence ("Wife"), Stanley J. Lawrence ("Debtor") and Mobile Manor Inc. ("Mobile Manor"). In support of this Motion, the trustee states as follows:

1. Debtor filed a petition for relief under Chapter 13 of title 11, 11 U.S.C. § 101, et seq., on November 2, 2015. Linda S. Parks is the duly appointed and acting trustee of the debtor's bankruptcy estate.

2. Wife was an employee of Mobile Manor until 2015 when she was terminated. At that time, Wife and Mobile Manor entered into a release agreement in which Wife agreed to reimburse her former employer for credit card charges used to build and furnish the house that Wife and Debtor owned and lived in (the "Property"). This house was built on a vacant lot that Wife and Debtor had purchased with funds from a home they jointly owned in the Rocky Creek area of Wichita, Kansas. (the "Rocky Creek Home").

3. After purchasing the Property, Debtor deeded over his interest to Wife for no consideration. Despite the deed, Debtor continued to live in and work on the Property over the next 7 to 8 years. Debtor and Wife used the proceeds from the sale of the Rocky Creek Home as well as credit cards held in the name of Mobile Manor to fund the remaining construction and furnish the house on the Property.

In the United States Bankruptcy Court
For the District of Kansas
*In re Lawrence,* Case No. 15-12373
Motion for Approval of Intended Compromise
Page 2

4. In order to fund Wife's release agreement with Mobile Manor, Wife and Debtor jointly took out a mortgage loan from Vintage Bank which was secured by the Property. Wife and Debtor deposited the mortgage funds into Wife's checking account and such funds were later used to repay Mobile Manor.

5. When Debtor filed his bankruptcy schedules, he did not disclose ownership of the Property or any other real estate. Debtor did not claim the Property as exempt on his Schedule C although he did list the Property as his "homestead" on Schedule D with Vintage Bank as the secured creditor.

6. The Trustee filed an Adversary Proceeding against Wife, Debtor and Mobile Manor on or about June 29, 2017 (*Parks v. Lawrence et al,* Adv. Pro, No. 17-5082; the "Lawsuit"). In the Lawsuit, the trustee alleged that the previously described behavior amounted to a fraudulent conveyance for the benefit of Wife, a preference payment to Mobile Manor, and/or a preference payment to Wife. The trustee also made a claim in equity against Wife. Debtor, Wife and Mobile Manor all filed Answers in the Lawsuit denying the claims of the trustee.

7. The Trustee, Wife, Debtor and Mobile Manor have reached an agreement to settle the Lawsuit and have entered into a Settlement Agreement which is attached hereto as Exhibit A. Pursuant to the Settlement Agreement, Mobile Manor will pay the trustee the total sum of $55,000.00 within ten (10) days after an Order is entered approving the compromise and attached Settlement Agreement, and, in consideration thereof, the trustee will dismiss the Lawsuit. Within five days after the trustee receives payment from Mobile

In the United States Bankruptcy Court
For the District of Kansas
*In re Lawrence,* Case No. 15-12373
Motion for Approval of Intended Compromise
Page 3

Manor, each party shall sign and file a Stipulation of Dismissal with Prejudice in the Lawsuit. Thereafter, Wife and Debtor shall reimburse Mobile Manor for the $55,000 plus all attorney's fees and expenses that Mobile Manor has or will incur in defending the Lawsuit. (this total amount shall be the "Indemnity Settlement"). The Indemnity Settlement shall be secured by a mortgage on the Property in favor of Mobile Manor and on the terms and conditions as set forth in the attached Settlement Agreement.

8. The Settlement Agreement is subject to approval by written Order of this Court and shall be null and void should no such Order be entered. The Trustee hereby requests that the Settlement Agreement be approved by an Order granting this Motion.

9. In order to avoid any further expense, delay and uncertainty of litigation, the trustee believes the settlement offer should be accepted, which offer will settle all issues, and in consideration thereof, the trustee will dismiss the Lawsuit.

10. The trustee believes the proposed settlement offer and release is in the best interests of the estate and should be approved.

WHEREFORE, the trustee prays that her Motion be granted; and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Linda S. Parks*
Linda S. Parks (#11648)
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Suite 950
Wichita, Kansas 67202
Telephone: 316-265-7741
Attorneys for trustee

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, is made and entered into the last date of the parties' signatures, below, by and between **Linda S. Parks**, Trustee in the Chapter 7 bankruptcy of Stanley Jay Lawrence, Case Number 15-12373 in the United States Bankruptcy Court for the District of Kansas ("Trustee"); **Stanley Jay Lawrence** ("Stanley"); **Dian L. Lawrence** ("Dian"); and **Mobile Manor, Inc.**, a Kansas corporation ("MMI"). Stanley and Dian are husband and wife and are hereinafter collectively referred to herein as the Lawrences.

## I. RECITALS

A. Prior to May 15, 2015, Dian was employed in the office of MMI. In the course of her employment there, she had access to petty cash, credit cards and other means of payment intended only for MMI's use.

B. Beginning in 2010 and until approximately May 7, 2015, through her position of employment at MMI, Dian embezzled for the Lawrences' personal benefit funds belonging to MMI, without MMI's knowledge or authority, totaling at least $182,520.22.

C. Stanley knew of and participated in Dian's embezzlement of MMI's funds. Some of the funds were used by Stanley to build the Lawrences' home located at 15616 E. Lynnwood Street, Wichita, Kansas (the "Homestead").

D. MMI and the Lawrences reached a settlement whereby if the Lawrences would repay the amount that had been embezzled, MMI would not submit a claim to its insurance carrier (and it was assumed the insurance carrier would require MMI to report the Lawrences' conduct to law enforcement authorities.)

E. To fund the settlement, on August 11, 2015, the Lawrences mortgaged the Homestead to Vintage Bank in the amount of $190,000.00, Dian signed a promissory note to Vintage Bank that was secured by the mortgage, the loan

proceeds were deposited in Dian's account at Vintage Bank, and on August 17, 2015, Dian paid MMI $182,520.22 in exchange for a release MMI granted Dian.

F. On November 2, 2015, 77 days after Dian paid MMI $182,520.22, Stanley filed a Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Kansas, Case Number 15-12373 (the "Bankruptcy Case"). The Trustee was appointed and is currently the duly acting trustee in the Bankruptcy Case.

G. On June 29, 2017, Trustee filed an adversary proceeding (Adversary No. 17-5082, the "Adversary Proceeding") against Dian, Stanley and MMI, seeking, among other relief, to recover the settlement payment made to MMI as a preferential transfer under 11 U.S.C. § 547.

H. The parties hereto have conducted arms-length negotiations and have reached a settlement of the Trustee's claims and the corresponding indemnity claims of MMI against Stanley and Dian.

NOW THEREFORE, in consideration of the above recitals and the mutual covenants contained herein, the parties hereby agree as follows:

## II. AGREEMENT

1. MMI will pay the Trustee $55,000.00 (the "Settlement Payment"). Upon receipt of the Settlement Payment, the Trustee will dismiss with prejudice the Adversary Proceeding. MMI's Settlement Payment to the Trustee will be delivered in certified funds within ten days after the Bankruptcy Court enters an order under Fed. R. Bankr. P. 9019 approving this settlement. The parties' counsel will sign and file a Stipulation of Dismissal With Prejudice under Fed. R. Civ. P. 41(a)(1)(A)(ii) and Fed. R. Bankr. P. 7041 within five days after MMI delivers the Settlement Payment to the Trustee.

2. The Lawrences shall reimburse MMI for (a) the Settlement Payment,

and (b) all attorneys' fees and expenses MMI has or will incur in defending the Adversary Proceeding. Attorneys' fees and expenses incurred by MMI to June 30, 2018 total $14,867.14. The total amount shall be determined at the time the mortgage to be executed by the Lawrences to MMI is executed. The total of the Settlement Payment and attorneys' fees and expenses shall be referred to herein as the "Indemnity Settlement."

    3.    The Indemnity Settlement shall be paid by the Lawrences to MMI in full with no interest within 365 days after the Bankruptcy Court enters an order under Fed. R. Bankr. P. 9019 approving this settlement. The Indemnity Settlement shall be secured by a mortgage in favor of MMI against the Homestead, which mortgage shall be executed by the Lawrences on or before the date the Settlement Payment is tendered to the Trustee. The mortgage will contain normal and customary terms and consistent with the terms of this Agreement. If the Indemnity Settlement is not paid in full on or before the date it is due, MMI may enforce the same by all means allowed by law and equity, including, but not limited to foreclosure. MMI shall be entitled to collect its costs of collection, including reasonable attorneys' fees, in the event the Indemnity Settlement is not timely paid. The Trustee consents to the Lawrences' use of the Homestead as collateral for a loan to pay all or a portion of the Indemnity Settlement and waives any objection she had or has to Stanley's claimed homestead exemption in the Homestead.

    4.    The Indemnity Settlement shall be nondischargeable in Stanley's pending bankruptcy case (Case No. 15-12373). The parties stipulate that the Indemnity Settlement arises post-petition. In addition, the parties stipulate the Indemnity Settlement shall be nondischargeable pursuant to 11 U.S.C. § 523(a)(4) in any bankruptcy filed by the Lawrences, or either of them, after the date of this Agreement. In the event any portion of this paragraph is deemed unenforceable or nonbinding on the Lawrences or either of them, the Lawrences stipulate that the facts set forth above in the Recitals are true.

    5.    The above Recitals are incorporated herein as a part of this agreement.

### III.  ADDITIONAL PROVISIONS

6. The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of the remaining terms and provisions hereof and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

7. Time is of the essence of this agreement.

8. All rights of the parties hereunder shall inure to the benefit of their successors and assigns.

9. This Agreement and documents referred to herein are intended by the parties as their final expression of their agreement and are intended as a complete and exclusive statement of the terms and conditions thereof. Acceptance or acquiescence in a course of performance rendered under this Agreement shall not be relevant to determine the meaning of this Agreement even though the accepting or acquiescing party had knowledge of the nature of the performance and opportunity for objection.

10. This Agreement may be changed, waived, or terminated only by a statement in writing signed by the party against which enforcement of the change, waiver or termination is sought to be enforced.

11. This Agreement may be executed in multiple and identical counterparts, and each, when fully executed, shall be deemed an original. However, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart if signed by the party against whom enforcement is sought. Facsimile and/or electronic signatures shall be treated in all manner and respects as a binding and original document, and such signature of any party shall be considered for these purposes as an original signature.

12. All parties agree to take additional actions, including the execution and delivery of any additional documents necessary or desirable to effectuate the provisions and spirit of this Agreement.

13. No waiver by MMI of any default or other obligation of any other party to this Agreement shall be effective unless in writing nor shall any waiver operate as a waiver of any other default or of the same default on a future occasion.

14. This Agreement was made in Kansas and shall be governed and construed according to the laws of the state of Kansas.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates adjacent to their respective signatures below.

_____  7/31/18
Linda S. Parks, Trustee          Date

_____  8/2/18
Stanley Jay Lawrence             Date

_____  8/2/18
Dian L. Lawrence                 Date

_____  8-2-18
Richard Peckham, President       Date
Mobile Manor, Inc.